FILED by \_\_\_\_\_ D.C.

NOV 0 3 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – FT. LAUD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

---

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

CONSUMER COLLECTION ADVOCATES, CORP., a Florida corporation,

and

MICHAEL ROBERT ETTUS, individually and as an officer of CONSUMER COLLECTION ADVOCATES, CORP.,

    Defendants.

Civil No. _____

---

**PLAINTIFF FEDERAL TRADE COMMISSION'S COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule," 16 C.P.R. Part 310.

1

## **JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2), (c)(1) and (2), and 15 U.S.C. § 53(b).

## **SUMMARY OF THE CASE**

4.      Defendants telemarket purported recovery services to consumers claiming that Defendants will collect the funds that consumers previously lost to telemarketing fraud, such as timeshare resale and precious metal investments. In order for Defendants to begin their services, consumers must pay a large up-front fee to Defendants. By charging an up-front fee, Defendants have violated the Telemarketing Sales Rule ("TSR"), which specifically prohibits such advance payments. Defendants have further violated the TSR as well as Section 5 of the FTC Act by misrepresenting to consumers that Defendants' services will recover or are highly likely to recover a substantial portion of consumer's previous loss within six months.

5.      In truth and in fact, after paying the up-front fee, consumers typically recover none of their prior losses as a result of Defendants' services. Indeed, by purchasing Defendants' recovery services, consumers lose even more money to telemarketing fraud. In the last year, Defendants have taken in close to $1.3 million from consumers, many of whom are elderly.

6.      In order to put an immediate stop to Defendants' scheme and hold Defendants liable for millions of dollars of consumer harm, Plaintiff FTC seeks preliminary and permanent injunctive relief and monetary restitution.

## PLAINTIFF

7. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

8. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), 57b, 6102(c), and 6105(b).

## DEFENDANTS

9. Defendant CONSUMER COLLECTION ADVOCATES, CORP. ("CCA") is a Florida corporation with its principal place of business at 1001 W. Cypress Creek Road, aka 1001 NW 62nd Street, Fort Lauderdale, Florida 33309. CCA transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, CCA has initiated outbound telephone calls to induce consumers to purchase its recovery services.

10. Defendant MICHAEL ETTUS ("Ettus"), is the president and sole owner of Consumer Collection Advocates, Corp. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices of CCA including the acts and practices set forth in this Complaint. Defendant Ettus resides in this district and in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMERCE

11.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

12.     Since at least 2011, and continuing thereafter, Defendants have engaged in a telemarketing program or campaign to induce consumers to purchase recovery services. Defendants' telemarketers make unsolicited outbound telephone calls to consumers throughout the United States.

13.     During telemarketing calls, Defendants claim that CCA engages in public service campaigns to collect funds for consumers victimized by fraud or telemarketing scams involving, for instance, timeshare resales and commodities investments. Defendants also tell consumers that CCA has lists of victims of fraud, which include the consumers' names, and that Defendants guarantee to recover substantial amounts of money for their customers who were victimized by such fraud.

14.     CCA's telemarketers tell consumers that, for a fee, CCA will recover funds that consumers have lost in previous telemarketing transactions. Specifically, Defendants tell consumers that they must pay CCA an up-front fee, which is 20% of the amount consumers previously lost, before CCA will begin their recovery services to collect consumers' lost money.

Defendants also inform consumers that they charge an additional back-end fee, which is 20% of the amount of any funds that the consumer recovers.

15. Since consumers contacted by Defendants have generally suffered a monetary loss ranging from several thousand to hundreds of thousands of dollars, a 20% up-front fee for recovery services is not affordable for many consumers. In those instances, Defendants request up-front fees of less than 10% of what consumers have lost.

16. Defendants' telemarketers represent that if consumers purchase CCA's services, the consumers will recover or are highly likely to recover a substantial portion of monies that consumers lost in previous telemarketing transactions, such as timeshare resale and precious metal investments. Specifically, Defendants represent that the amount of consumers' potential recovery will be 60% or more of consumers' loss figure. Defendants further claim that they will recover these funds for consumers typically within 30 to 180 days.

17. As a result of Defendants' representations that CCA's services will result in the recovery of consumers' money, some consumers agree to purchase Defendants' recovery services. Defendants send consumers documents that include a prepared contract and a limited power of attorney, and promotional materials. Consumers are instructed to sign the contract and power of attorney and return these documents along with their up-front payment to CCA. Consumers who purchase Defendants' recovery services have paid an up-front fee to Defendants in amounts generally ranging from hundreds to thousands of dollars by personal check, money order, or credit card.

18. Defendants also send out the prepared contract, power of attorney, and other documents to those consumers who have not agreed to purchase Defendants' recovery services

5

after one or more sales calls. Thereafter, Defendants continue to make repeated sales calls to these consumers and pressure them to sign up.

19. After paying CCA's up-front fee, consumers generally cease to hear further from Defendants. Consumers who call Defendants to inquire about the status of their recovery are typically told by Defendants that their case is being worked on and that more time is needed to recover their funds. Some consumers, frustrated by the fact that they have neither recovered any of their funds nor been contacted by Defendants, file complaints with third parties, such as Florida State agencies and the Better Business Bureau.

20. In numerous instances, consumers who pay the up-front fee to Defendants have not recovered the funds they lost in previous telemarketing transactions as a result of Defendants' recovery services. Therefore, consumers have lost even more money on telemarketing fraud by also losing the money they spent to purchase Defendants' recovery services.

## **VIOLATION OF THE FTC ACT**

21. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts and practices in or affecting commerce."

22. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## **COUNT I**

23. In numerous instances, in connection with the marketing, promotion, offering for sale, or sale of recovery services, Defendants have represented, directly or indirectly, expressly or by implication, that, as a result of purchasing Defendants' services, consumers will recover, or

6

are highly likely to recover, a substantial portion of the monies that the consumers previously lost to telemarketers typically within 30 to 180 days.

24. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 23 of this Complaint, as a result of purchasing Defendants' services, consumers do not recover and are not highly likely to recover a substantial portion of the monies that the consumers previously lost to telemarketers within 30 to 180 days, or at all.

25. Therefore, Defendants' representations as set forth in Paragraph 23 of this Complaint are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## THE TELEMARKETING SALES RULE

26. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, in 1994. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain sections thereafter. 16 C.F.R. Part 310.

27. The TSR states, *inter alia*, that it is an abusive telemarketing act or practice and a violation of the Rule for any seller or telemarketer to engage in the following conduct:

> Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous telemarketing transaction, until seven (7) business days after such money or other item is delivered to that person. 16 C.F.R. § 310.4(a)(3).

28. The TSR also prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy,

nature, or central characteristics of the goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii).

29. Defendants place "outbound calls" and are "sellers" or "telemarketers" engaged in "telemarketing," as those terms are defined in the TSR, 16 C.F.R. § 310.2(v), (aa), (cc), and (dd).

30. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### COUNT II

31. In numerous instances, in connection with the telemarketing of a recovery service, Defendants have requested or received payment of a fee from a person for services represented to recover or otherwise assist in the return of money paid by that person in a previous telemarketing transaction, without waiting seven (7) business days after such money is delivered to that person.

32. Defendants' acts or practices, as described in Paragraph 31, violate Section 310.4(a)(3) of the Telemarketing Sales Rule, 16 C.F.R. § 310.4(a)(3).

### COUNT III

33. In numerous instances, in connection with the telemarketing of a recovery service, Defendants have misrepresented, directly or by implication, material aspects of the performance, efficacy, nature, or central characteristics of the service that is the subject of their sales offer, including that, as a result of purchasing Defendants' services, consumers will recover, or are

highly likely to recover, a substantial portion of the monies that the consumers previously lost to telemarketers typically within 30 to 180 days.

34. Defendants' acts or practices, as described in Paragraph 33, violate Section 310.3(a)(2)(iii) of the Telemarketing Sales Rule, 16 C.F.R. § 310.3(a)(2)(iii).

## CONSUMER INJURY

35. Consumers have suffered and will continue to suffer substantial injury as a result of the Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

36. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

37. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts and the refund of money.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.   Award Plaintiff FTC such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access to business premises, and the appointment of a receiver;

B.   Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

C.   Award such relief as the Court finds necessary to redress injury to consumers resulting from the Defendants' violations of the FTC Act and the TSR, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.   Award Plaintiff FTC the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

Dated: 11/3/14

BARBARA E. BOLTON
Special Florida Bar No. A5500848

225 Peachtree Street, N.E., Suite 1500
Atlanta, Georgia 30303
(404) 656-1362 (Bolton)
(404) 656-1354 (Elg)
(404) 656-1379 (Facsimile)
Email: bbolton@ftc.gov
Email: selg@ftc.gov
Email: BCPBriefBank@ftc.gov
Email: ecfatlanta@ftc.gov

**ATTORNEYS FOR PLAINTIFF**
**FEDERAL TRADE COMMISSION**